### SMITH v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. June 3, 1904.)

1. PERSONAL INJURY—EVIDENCE.
    Evidence in an action for personal injury *held* insufficient to show that plaintiff had a floating kidney as a result thereof, in the absence of which the verdict was excessive.
    Hirschberg, P. J., and Hooker, J., dissenting.

Appeal from Special Term, Kings county.

Action by Margaret Smith against the Brooklyn Heights Railroad Company. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

I. R. Oeland, for appellant.
Leo G. Rosenblatt (Julien M. Isaacs, on the brief), for respondent.

JENKS, J. The plaintiff recovered a verdict for $6,250. She contends that a floating kidney is consequent to the accident. This is, perhaps, the most serious of the injuries. In any event, the verdict is excessive unless that ailment exist. I am not satisfied with the testimony upon this subject. The plaintiff was attended by Dr. Jones, who is dead, and by Dr. Hunt, whom she did not call to the witness stand. She called only Dr. Lewengood, who examined her on two occasions in order to testify on the trial. He testifies to the existence of a floating kidney. When he made his examination in June, 1903, he had, he states, "her movable kidney between my thumb and fingers; that wasn't subjective; that was positive." When recalled he testified, "To make us reasonably sure, we have

to get it in our fingers." There was an examination of the plaintiff on June 10, 1903, on the day before the trial, made by Dr. Baker, a woman appointed by the court. Dr. Lewengood, on his redirect examination, when he was first called, testified: "I did not see Dr. Baker examine the plaintiff for movable kidney. After she was through with her examination, I examined again for movable kidney, and I found it again." When recalled, and under cross-examination, he was asked: "Didn't you, on your direct examination, this morning, say that you got it between your fingers on the first examination, and that you did it yesterday also? A. Oh, no; I did not say that I got it yesterday. I said I made an examination yesterday. I don't remember saying that I ever did that. If I stated that I did get it between my fingers yesterday, then I was mistaken that time." It may be that there is no absolute self-contradiction in these excerpts, for it is true that the witness had not said that he took the kidney between his thumb and fingers on the second examination. But this is not all. He continues: "To make us reasonably sure, we have to get it in our fingers. That was my testimony this morning. On yesterday I didn't get it between my fingers, and I didn't make any examination that could determine whether or not there was a floating kidney. I just, while she was in that position, thought I would, and I couldn't go on." How is this statement to be reconciled with the previous statement? "I did not see Dr. Baker examine the plaintiff for movable kidney. After she was through with her examination, I examined again for movable kidney, and I found it again." Dr. Baker testifies that she did not attempt to examine the plaintiff for floating kidney because the subject was too nervous to stand it, as it was very painful to any one. Dr. Lewengood testified that it "is apparent to the eye whether a physician examining a patient is examining for movable kidney." The plaintiff, recalled, testified that when Dr. Lewengood examined her on the second occasion "Dr. Baker was in the other room to wash her hands. She was gone, but I can't remember how long it was. I think she had a glass door where she washed her hands. It was open." Dr. Lewengood then says that such examination was "only partial," and that it was after Dr. Baker had gone to the adjoining room to wash her hands. Dr. Baker says: "After I got through my examination, I went somewhere to wash. That didn't take me two minutes. I do know what Dr. Lewengood was doing at that time. I know he did not examine her kidney. I know that he did not examine. I was watching him while I was washing my hands. The basin was just in the closet—just off this room—and the door was standing wide open. I didn't have to turn my back to the patient in order to wash. I didn't have to turn my back.". The defendant also called Dr. Browning, an eminent physician, who examined the plaintiff in November, 1901, at the defendant's request, in the presence of her physician, Dr. Jones. He testifies that he made a careful and painstaking examination for a movable kidney, and that there was none at that time. If the jury disregarded the floating kidney, its verdict is excessive. If the verdict is based upon some compensation for such an ailment, this court should set it aside, because the plaintiff

is not entitled to recover therefor upon the evidence. McDonald v. Metropolitan Street R. Co., 167 N. Y. 66, 70, 60 N. E. 282.

The judgment and order should be reversed, and a new trial be granted, costs to abide the event. All concur, except HIRSCH-BERG, P. J., and HOOKER, J., who dissent.